## Eli S. Harris v. Thomas Rhodes, Executor.

1. LAST WILL AND TESTAMENT—*how intention ascertained in absence of ambiguity.* In the absence of an ambiguity, the intention of the testator must be gathered from the language employed by him and not from extraneous facts and circumstances.

2. FEE SIMPLE—*when devise for life with power to sell, does not vest.* A devise for life with a limited power of sale, does not vest a fee simple of an estate.

3. "HEIRS AT LAW"—*as used in will, defined.* The phrase. "heirs at law," as used in the following clause: "whatever may remain of my estate shall be equally divided among the heirs at law of my said wife," includes the husband of the wife who had remarried after the death of the testator.

Intervening petition. Appeal from the Circuit Court of Piatt county; the Hon. SOLON PHILBRICK. Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded with directions. Opinion filed November 27, 1906.

JAMES L. HICKS and M. R. DAVIDSON, for apellant.

W. G. CLOYD and REED & REED, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal by Eli S. Harris, an intervening petitioner, from an order of distribution entered by the Circuit Court of Piatt county, in the matter of the will of Isaac Thompson, deceased, of which said will, appellee is the surviving executor.

The facts which are undisputed, briefly stated, are substantially as follows: Isaac Thompson died childless, on or about March 13, 1895, leaving his wife, Mary E. Thompson, him surviving. By his will he nominated his wife and appellee, Thomas Rhodes, as executors thereof, and upon the will being proved in the County Court, letters testamentary were issued to them. The portions of said will which we deem material to the issues here involved, are as follows:

"2nd. It is my will that my wife, Mary E. Thompson, shall have all my personal property, money, and effects of whatever kind of which I may die seized or possessed, as her absolute property."

"3rd. It is my will that my said wife shall have the real estate of which I may die seized or possessed, of whatever kind or wherever situated, for and during the term of her natural life, such life estate subject, however, to the conditions mentioned in Clause 1, of this my said will, and to the further provision

that if my said wife should deem it necessary for her support and maintenance or for her general comfort or convenience to sell and convey absolutely and in fee any or all of said real estate of which I may die seized or possessed, she may in her discretion do so, or may, by mortgage or otherwise, encumber any portion of said real estate for her said support and maintenance.''

"5th.   On the death of my said wife, it is my will that such of my real estate as shall not have been. sold under this my said will, shall be sold by my surviving executor, and the proceeds of such sale and whatever may remain of the proceeds of any sale of real estate made under this will before the death of my said wife shall be divided as follows:

"To my nephew, Joseph Braucher, six hundred dollars, to my sister Elizabeth Slater, five hundred dollars.   *   *   *   After the last two foregoing specific bequests are satisfied, then whatever may remain of my said real estate, I will shall be equally divided among the heirs-at-law of my said wife.   *   *   *   ''

On October 1, 1896, Mary E. Thompson, widow of said testator, was married to appellant, Harris, with whom she continued to live until her death which occurred on September 15, 1905.   No children were born as the issue of said marriage.   The widow failed to exercise the right conferred upon her by said will, to sell or encumber the real estate for her support. At the October term, 1905, appellee, as surviving executor, filed in the County Court a petition in which, after representing that the said Mary E. Harris left surviving her no children or descendants of children as her heirs at law, and that she left her surviving appellant, her husband, Sarah Oldfield, Hannah Braucher and Eliza Woodward, her sisters; William Trigg, her brother; Thomas, Charles, Samuel and George Rhodes and Eliza Priestly, children of a deceased sister; and George, Henry, Charles and Albert Trigg, Vina Sullivan and Minnie Marvel, children of a deceased brother—he prayed that an order

be entered directing him to sell the real estate in question, and after discharging all liens thereon, to divide the remainder of the proceeds among the persons named in said petition, other than appellant. Upon the property being sold, the court approved the sale; found the heirs at law of Mary E. Harris to be the persons mentioned in the petition, other than appellant; and ordered the net proceeds of the sale to be divided in accordance with the prayer of the petition. Whereupon appellant filed an intervening petition alleging that he had not been made a party to said proceeding; that he was the surviving husband of Mary E. Harris and as such entitled to the entire net proceeds of said real estate under the will of Isaac Thompson; and praying that the order of distribution be vacated. The intervening petition was denied and appellant appealed to the Circuit Court, where the order of the County Court was affirmed. Whereupon the present appeal was taken.

The only questions presented by this record for our determination are whether appellant under the terms of the will of Isaac Thompson is entitled to all or any of the proceeds of the real estate in question, and if so, to what proportion thereof.

Appellant contends that he is an heir at law of Mary E. Thompson, his deceased wife, and that she having died intestate and without issue, he is entitled to the entire fund in controversy. In support of such contention he relies upon section 1 of the statute entitled "Descent," which reads, in part, as follows:

"That estates  *  *  *  of residents  *  *  * in this state dying intestate  *  *  *  shall descend to and be distributed in the manner following, to wit, *  *  *  Third. When there is a widow or surviving husband and no child or children, or descendants of a child or children of the intestate, then  *  *  * one-half of the real estate and the whole of the per-

sonal estate, shall descend to such widow or surviving husband as an absolute estate forever," etc. Rev. Stat. (1905), 763.

Appellee first contends that the statute of "Descent" has no application to the questions under consideration, for the reason that the property involved was not that of Mary E. Harris, and could, therefore, in no event, descend to appellant as heir at law. That the words "heirs at law," being used by the testator to describe a relationship to a person other than the testator, were intended by him to be used in the sense of "heirs apparent."

In Richards v. Miller, 62 Ill. 417, where the construction of the clause "I give, devise and bequeath to my 'heirs at law,' the remainder of my estate" was under consideration, the court said:

"Is the husband an heir? The statute unquestionably makes him such when it says that upon certain contingencies, one-half of the real estate of the wife shall descend to him as his exclusive estate forever. An heir is one who inherits. He takes an estate and land from another by descent, as distinguished from a devisee, who takes by will. He is the one upon whom the law casts the estate immediately upon the death. * * * Can we according to the rules of interpretation and with nothing in the context to aid, construe the words 'heirs at law' in the popular sense? Can we say the next of kin were intended? To do so would be a bold advance toward overturning established rules."

In Alexander v. N. W. M. Aid Ass'n, 27 App. 29, the benefit certificates in controversy were payable to "the devisees or to the heirs at law" of one Elijah S. Alexander. It was there held that as Alexander died leaving no children, his surviving widow was his sole heir at law and entitled to the proceeds of the certificates. In Lawwill v. Lawwill 29 App. 643, the facts and legal questions involved were sub-

stantially similar to those in the case last cited, and
a like conclusion was reached.   It is insisted by coun-
sel for appellee that the Richards case, *supra,* is
distinguishable from that at bar, in that in the
former case the lands, in the proceeds of which the
surviving husband claimed an interest, were the
property of his wife, while in the present case ap-
pellant is claiming an interest in land which belonged
to a stranger to him.   While such distinction exists
we think the reasoning of the court in the Richards
case is nevertheless applicable here.   It will be noted
that in the Alexander case, *supra,* the wife stood in
precisely the same relation to the source of the
property concerned, as appellant stands to the
testator.

Appellee further contends that it is manifest from
the conditions shown to have existed at the time of
the making of the will, that the testator could not
have intended to provide for the man who should
marry his widow; that his intention was obviously
to provide for her brothers and sisters and not for
one who was a stranger to him either by consanguin-
ity or affinity; that to construe the phrase in question
as contended for by appellant would be to defeat the
obvious intention of the testator by giving to the
words employed by him an arbitrary and technical
meaning not intended.

In answer to such contention it may be said that
while the testator probably did not anticipate a re-
marriage by his wife and her death without issue,
the contingency was one that he failed to provide
against and it is not for us to remedy the oversight.
If the language used was ambiguous or capable of
more than one construction, the argument advanced
would be proper to consider in endeavoring to ascer-
tain the intention of the testator.   Engelthaler v.
Engelthaler, 190 Ill. 230.   In the absence of any such
ambiguity his intention must be gathered from the

ERRATUM (App. 130.)

PAGE 238, 2ND LINE FROM BOTTOM OF PAGE,
"190 Ill. 230" should be: "196 Ill. 230."

language employed by him and not from extraneous facts and circumstances. People v. Jennings, 44 Ill. 448. No necessity for the application of the rule here arises, for the reasons already stated.

Counsel for appellee still further insists that the right to the proceeds of the land vested, at the death of the testator, in those persons who were at that time the next of kin or heirs apparent of Mrs. Thompson; while counsel for appellant, in their reply brief, take the position that inasmuch as the will gave Mrs. Thompson an absolute power to sell and convey the fee in the real estate, she thereby became the owner of the fee of the premises, whereby appellant as surviving husband would be entitled to the entire proceeds. The will did not confer upon Mrs. Thompson a general power to sell and convey the land. The power of sale was only to be exercised in the event that she should deem it necessary for her support, maintenance or general comfort and convenience. The power was thus limited, and as she failed to exercise the same during her life, the fee at her death was freed therefrom.

We are of opinion that upon the death of the testator the fee to the real estate in question—subject to the rights and powers conferred upon the widow by the will—vested in the surviving executors in trust, for the purpose of selling the same and dividing the proceeds equally among those who became the heirs at law of Mary E. Thompson at the date of her death. We are further of opinion that appellant may be properly regarded as one of the heirs at law. We cannot, however, agree with the contention of appellant that he became entitled to the entire fund. The language of the will forbids such conclusion. The words, "whatever may remain of my estate shall be equally divided among the heirs at law of my said wife," are clear and unambiguous. The words "equally divided among" are of general and common use. Whether used either singly or in conjunction

their meaning is fully understood by the most illiterate. To utterly ignore them would be to do violence to the established rule of law that if one construction of a will would render a portion of its language meaningless and a different one would give effect to all the language used, the latter must be adopted. Lomox v. Shinn, 162 Ill. 124.

We therefore hold that under the terms of the will the funds in the hands of appellee as surviving executor should be equally divided between the heirs at law of Mary E. Thompson, treating appellant as one of them, and giving to him such portion as will result from dividing the said funds into as many shares as there are heirs at law, including appellant. The judgment of the Circuit Court is reversed and the cause remanded with directions to distribute the fund as herein indicated.

*Reversed and remanded with directions.*